| | |
|---|---|
| Wesley Paul Coonce, Jr., | |
| Petitioner, | Case No. 6:20-cv-08000-BCW |
| v. | **Motion for permission to contact jurors** |
| United States of America, | |
| Respondent. | |

Petitioner Wesley Paul Coonce, Jr., by undersigned counsel, asks this Court for an order authorizing counsel to contact the individuals who served as jurors and alternate jurors at his capital trial. The government has not yet indicated its position on this motion but opposed a similar motion by co-defendant Charles Hall. *See United States v. Hall*, No. 4:21-cv-08001-BCW, ECF No. 39-1, at 1 (W.D. Mo., Apr. 10, 2023).

## BACKGROUND

This is a 28 U.S.C. § 2255 action following the federal conviction and death sentence of Petitioner Wesley Paul Coonce, Jr. Coonce's § 2255 motion is due on or before August 9, 2023. ECF No. 16.[1] Although the Government has further waived any statute of limitations defense until February 9, 2024, the parties are waiting for this Court's permission to file notice of this agreement. ECF No. 36.

To properly investigate all claims for this § 2255 motion, Coonce asks this Court for permission to contact all jurors and alternate jurors who served at his trial. Coonce cannot undertake this task without this Court's permission given the Court's post-trial order prohibiting anyone involved with the case from contacting

---

[1] Coonce refers to those documents filed in this case as "ECF No." and those filed in the underlying criminal case, *United States v. Coonce*, No. 10-03029-CR-S-GAF, as "Dkt. No." to distinguish between the two.

jurors without the Court's permission. *See* Dkt. No. 788.[2] As explained below, post-conviction investigation here requires juror contact, and therefore Coonce seeks this Court's permission to do so.

### ARGUMENT

Post-conviction counsel in a capital case "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey v. Zant*, 499 U.S. 467, 498 (1991). "Omission of [any] claim" risks forfeiting a ground for relief even if "evidence discovered later might" also "support[] or strengthen[] the claim." *Id.* Post-conviction counsel must also engage in these detailed inquiries to create "a sufficient record for a reviewing court" to properly decide entitlement to relief. *Guy v. Cockrell*, 343 F.3d 348, 354 (5th Cir. 2003). Moreover, without a "thorough investigation of law and facts," it is almost impossible for post-conviction counsel to inquire into the reasonableness of "particular decision[s]" made by trial counsel. *See Strickland v. Washington*, 466 U.S. 668, 690–91 (1984).

Consistent with this need for a thorough investigation, post-conviction counsel must be allowed to interview members of a capital jury. The Supreme Court has long held that juror misconduct, such as bias or external influence, violates a defendant's fundamental right to a fair trial and impartial jury. *See, e.g.*, *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 228–29 (2017); *Parker v. Gladden*, 385 U.S. 363, 363–66 (1966) (per curiam); *Turner v. Louisiana*, 379 U.S. 466, 471–74 (1965); *Remmer v. United States*, 347 U.S. 227, 229–30 (1954); *Mattox v. United States*, 146

---

[2] The order apparently stemmed from a news story about the possibility of an anti-death penalty protest that would be held outside the courthouse. Dkt. 863 at 12–13. The government later requested an order prohibiting the parties from having any contact with the jurors. Dkt. No. 883. The trial court denied that motion as moot in light of its prior order prohibiting juror contact without court permission. Dkt. No. 884.

U.S. 140, 150–51 (1892). "Without the ability to conduct free and unencumbered jury investigation post-conviction attorneys have little chance of discovering evidence of this misconduct, giving the defendant no remedy for the violation of his constitutional rights." Kathryn E. Miller, *The Attorneys Are Bound and The Witnesses Are Gagged: State Limits on Post-Conviction Investigation in Criminal Cases*, 106 Calif. L. Rev. 135, 155 & n.119 (2018). Redress is indeed impossible absent investigation, because these claims often rely on information outside the trial record and must be raised for the first time in post-conviction proceedings. *See id.* at 190 & n.321.

Both federal and state courts have consistently relied on post-conviction information about juror misconduct to order relief. In some cases, counsel learned that jurors during voir dire omitted information about possible bias. *See, e.g.*, *Sampson v. United States*, 724 F.3d 150, 161–68 (1st Cir. 2013) (hearing revealed that capital juror repeatedly lied in response to voir dire questions); *United States v. Tucker*, 137 F.3d 1016, 1021–29 (8th Cir. 1998) (counsel discovered after trial that a juror did not disclose possible bias against defendant); *State v. Dye*, 784 N.E.2d 469, 471–77 (Ind. 2003) (post-conviction proceedings revealed that capital juror lied on jury questionnaires and during voir dire).

And in other cases, counsel discovered that jurors were exposed to extraneous information. *See, e.g.*, *Barnes v. Joyner*, 751 F.3d 229, 235–37, 239–40 (4th Cir. 2014) (juror interviews revealed that a capital juror had consulted pastor during the trial); *Wisehart v. Davis*, 408 F.3d 321, 326–28 (7th Cir. 2005) (capital juror affidavit explained that the juror had improperly learned the defendant had taken a polygraph test); *United States v. Jackson*, 209 F.3d 1103, 1107–10 (9th Cir. 2000) (post-conviction investigator discovered that a juror had received a threatening phone call during the trial); *United States v. Hall*, 85 F.3d 367, 368–71 (8th Cir. 1996) (juror affidavit explained that the jurors overheard bench conferences

describing defendants' other criminal activity); *People v. Hensley*, 330 P.3d 296, 319–326 (Cal. 2014) (juror interviews divulged that capital juror had consulted pastor during penalty phase); *People v. Harlan*, 109 P.3d 616, 620–23, 626–33 (Colo. 2005) (trial court later discovered some capital jurors relied on biblical passages during deliberations).

These cases teach that inquiries into possible juror misconduct are necessary even where the trial record provides incomplete insight into the issue. All that is required is for the defendant to make "a preliminary showing" of possible misconduct and then the "district court may set aside a procedural hurdle limiting access to jurors." *Mitchell v. United States*, 958 F.3d 775, 792 (9th Cir. 2020). This inquiry must recognize that often "the only way this exploration can be accomplished is by asking the jury about it." *United States v. Moten*, 582 F.2d 654, 664 (2d Cir. 1978). For two reasons, Coonce has made a preliminary showing of possible juror misconduct.

First, Coonce has shown the possibility of juror bias. Coonce proposed several inquiries into jurors' relationships with the Springfield Medical Center, the site of the crime and one of the community's largest employers. *See* Dkt. No. 458-1 at 8 (asking for juror questionnaire to ask whether a "spouse, significant other, any member of your family, or a friend, ever worked in a prison, a jail or detention center"); Dkt. No. 702 at 1 (proposing voir dire question asking if jurors "know anyone who has ever worked in any capacity" at the Medical Center). Although the government agreed with this area of inquiry, Dkt. No. 452 at 6–7, the trial court never made specific inquiries into possible juror connections to the Medical Center, Dkt. No. 477 at 3–5; Dkt. No. 946 at 14–17, 20. Instead, as the Eighth Circuit acknowledged on appeal, the district court's general inquiries left "gaps in the responses," pretermitting any inquiry into whether jurors had "friends or family other than spouses working as correctional officers, or family or friends working at

FMC Springfield in an administrative capacity." *United States v. Coonce*, 932 F.3d 623, 644 (8th Cir. 2019). Thus, further investigation is needed to discover whether any jurors had a personal connection to the site of the crime.

There is another source of potential bias that Coonce must now investigate. Consistent with his primary penalty-phase argument, Coonce also proposed inquiries into jurors' attitudes about traumatic brain injuries and mental-health defenses. *See* Dkt. No. 458-1 at 14–15; Dkt. No. 702 at 2. Again, however, the trial court refused these questions, asking only about mental-health professionals more generally. Dkt. No. 819 at 69–70 (filed under seal). These general questions could not uncover specific prejudice against defenses involving mental illness that result from "strong feelings" on the issue. *See United States v. Jones*, 722 F.2d 528, 529–30 (9th Cir. 1983) (per curiam) (citations omitted). Juror "resistance" to these arguments often "stem[s] from suspicions that defendants malinger, and that the expert testimony on which a criminal responsibility defense depends is susceptible to bias." *Commonwealth v. Loya*, 139 N.E.3d 301, 309 n.13 (Mass. 2020); *see also* Andrea Lyon, *The Blame Game: Public Antipathy To Mental Health Evidence In Criminal Trials*, 21 New. Crim. L. Rev. 247, 265 (2018) ("[I]t is very easy for a juror to conflate mitigation with defense or excuse, even though that is not what it is at all."). A more probing inquiry of jurors' attitudes to particular mitigation is therefore imperative to determine whether jurors harbored bias against Coonce's penalty-phase defense.

Second, deliberations suggest the possibility of outside influence. Jurors at first informed the court "with 100 percent certainty" that they could not reach a verdict as to Hall, yet returned a unanimous death verdict fewer than two hours later. *Id.* (citations omitted). The jurors' position raises even more questions about deliberations both because of the quick change in vote regarding Hall and because even though the jurors ultimately found much more mitigation for Coonce than

Hall, it was Hall's sentence on which they reportedly deadlocked. *Compare* ECF Nos. 810 & 811 at 7–11 (W.D. Mo., Jan. 17, 2014) (finding four factors for Coonce at least one juror found mitigating, with one found unanimously and another found by eleven jurors), *with* ECF No. 812 at (finding only two factors for Hall at least one juror found mitigating, with none garnering more than a majority).

Although some concerns about external influence appear related to their deliberations of Hall's sentence, any external influence on deliberations would have implicated Coonce as well. And it would be "a 'manifest injustice to reverse the conviction of one co-defendant but to uphold the conviction of another co-defendant when the same error affected both defendants.'" *United States v. Cabrera*, 222 F.3d 590, 596 n.3 (9th Cir. 2000) (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992)). Typically, for juror contacts in cases involving co-defendants, it is "advisable to make all . . . co-defendants parties to this matter so that the investigation can be concluded quickly and efficiently in a single proceeding." *Moten*, 582 F.2d at 667.

Aside from investigating juror misconduct, interviewing jurors is crucial in post-conviction investigation because jurors can serve as witnesses to what occurred in court during trial. Of course, jurors cannot impeach their own verdict and therefore cannot testify "about their subjective mental processes or about objective events that occurred during deliberations." *Peña-Rodriguez*, 580 U.S. at 215. As it concerns deliberations, the only usable information is about racial bias, prejudicial extraneous information, improper outside influences, or mistakes made in entering the verdict. Fed. R. Evid. 606(b)(2). In any juror interviews, Coonce will proceed in accordance with these limitations. But jurors are witnesses outside of what occurs during deliberations. *See United States v. Ragin*, 820 F.3d 609, 621–23 (4th Cir. 2016) (considering juror testimony that counsel was sleeping—and that jurors discussed as much—in determining that *United States v. Cronic*, 466 U.S. 648

6

(1984), standard applied and was met); *Muniz v. Smith*, 647 F.3d 619, 624 (6th Cir. 2011) (considering juror affidavit of observations of defense counsel during trial in finding deficient performance); *Smith v. Winters*, 337 F.3d 935, 937 (7th Cir. 2003) (explaining that habeas petitioner could have substantiated claim of prosecutorial misconduct with affidavits from, among others, jurors); *Burdine v. Johnson*, 262 F.3d 336, 338–39 (5th Cir. 2001 (en banc) (considering state court testimony of multiple jurors that defense counsel slept during trial in affirming grant of habeas relief on *Cronic* claim); *United States v. Henley*, 238 F.3d 1111, 1118 (9th Cir. 2001) (citing *United States v. Cheek*, 94 F.3d 136, 144 (4th Cir. 1996)) (recognizing distinction between testimony that an incident occurred and testimony about effect of the incident on the jury's deliberations, the former of which is permitted and the latter of which is not); *United States v. Kimberlin*, 805 F.2d 210, 243–44 (7th Cir. 1986) (interpreting Rule 606(b) to not preclude evidence of "communications between jurors [that] were allegedly made during the course of trial" as opposed to "during the course of the jury's deliberations"). Jurors are therefore important witnesses to courtroom proceedings, including the conduct of defense counsel and the prosecution. Without the ability to interview them, Coonce is unable to gather information from important witnesses who observed the entire trial.

## CONCLUSION

For these reasons, Coonce requests that this Court grant this motion for permission to contact the individuals who served as jurors and alternate jurors at his capital trial.

Dated April 28, 2023.

Respectfully submitted,

*/s/ Amelia L. Bizzaro*

Amelia L. Bizzaro
Wisconsin State Bar No. 1045709
Assistant Federal Public Defender
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388–6577
amelia_bizzaro@fd.org

*/s/ John Jenab*

John Jenab
Missouri State Bar No. 47452
Jenab Law Firm, P.C.
P.O. Box 30
Lampe, MO 65681
(816) 759–8686
john.jenab@gmail.com