# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

WESLEY PAUL COONCE, JR.,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No.  20-08000-CV-S-BCW
Crim. No. 10-03029-01-CR-S-BCW

## GOVERNMENT'S RESPONSE AND SUGGESTIONS IN OPPOSITION TO PETITIONER'S MOTION FOR PERMISSION TO CONTACT JURORS

The respondent, the United States of America, respectfully requests that this Court deny the motion for permission to contact jurors, filed by the petitioner, Wesley Paul Coonce, Jr. (Civ. D.E. 38.)   The Government provides the following suggestions in opposition to the motion:

## I. **Summary**

Following a jury trial, Coonce and co-defendant Charles Hall were convicted of first-degree murder, and murder by a federal prisoner serving a life sentence.  The jury unanimously recommended that Coonce and Hall be sentenced to death, and this Court imposed that sentence.

Coonce has now filed a motion requesting permission to contact and interview jurors to prepare for the filing of his initial petition under 28 U.S.C. § 2255.  For the reasons set forth below, this Court should deny the motion.

## II.  **Procedural History**

On July 19, 2011, a federal grand jury returned a superseding indictment charging Coonce and Hall with first-degree murder, in violation of 18 U.S.C. § 1111; and Coonce (but not Hall) with murder by a federal prisoner serving a life sentence, in violation of 18 U.S.C. § 1118. (D.E. 59.)  The grand jury also made special findings as to four gateway mental state factors, 18 U.S.C. § 3591(a)(2)(A)-(D), and five statutory aggravating factors, 18 U.S.C. § 3592(c)(1), (4), (6), (9), (11).  On July 22, 2011, the government filed a notice of intent to seek the death penalty against both Coonce and Hall, under 18 U.S.C. § 3593(a). (D.E. 62.)[1]

Coonce and Hall proceeded to a joint jury trial, which began on April 28, 2014. After seven days, the jury found both Coonce and Hall guilty on all counts charged.  (D.E. 757.)

On May 23, 2014, in response to an anti-death penalty protest outside the courthouse, this Court entered an order stating:

> Pursuant to the events that transpired on May 23, 2014, it is ORDERED that no attorney for the Defendants or anyone working with the attorneys in this case is to reveal the names and/or any contact information of any juror, and further that the attorneys in this case are to advise everyone working with them of the above directive, and lastly that no one is to contact any of the jurors after they are discharged without the Court's permission to do so.

(D.E. 788.)

---

[1]"D.E. refers to the docket entries in Coonce's underlying criminal case, No. 10-03029-01-CR-S-BCW.  "Civ. D.E." refers to the docket entries in Coonce's civil case, No. 20-08000-CV-S-BCW.

This order has not been rescinded by the Court. After the penalty phase, the jury unanimously returned verdicts of death against both Coonce and Hall on June 2, 2014. (D.E. 810-811.)

On July 3, 2014, the Government filed a motion for order prohibiting contact with jurors. (D.E. 883.) Within the motion, the Government recited the Court's report that the jury expressed their desire not to discuss the specifics of the case with counsel for the government or the defense and that there was no instance or indication of juror misconduct. (D.E. 883.) This Court found the motion moot, given its previously imposed order. (D.E. 884.)

On appeal Coonce raised 16 arguments, including his eligibility for the death penalty; admitting evidence regarding Coonce's refusal to submit to an IQ test; jury instruction on brain damage as a mitigating factor; Coonce's incriminating statements to the government's psychiatrist, Dr. Park Dietz; footprint evidence and forensic blood evidence violating the Federal Rules of Evidence; the Court's jury instruction on future dangerousness; admitting evidence of BOP's administrative policies and costs for future dangerousness; removing Coonce before instructing the jury on protestors outside the courthouse and on confidentiality of juror information; admitting Coonce's BOP records of misconduct; using Coonce's prior convictions for aggravating factors; contesting dangerousness as an aggravating factor; improperly restricting voir dire on areas of bias; lack of individualized voir dire; denying Coonce a separate capital sentencing proceeding from Hall; challenging the weighing of factors in a capital sentencing proceeding; and that Coonce was arbitrarily sentenced based on geography because the Western District of

Missouri had more death penalty cases than the average district. *United States v. Coonce*, 932 F.3d 623, 632-646 (8th Cir. 2019). The Eighth Circuit addressed each of Coonce's arguments, upheld the verdicts, and affirmed Coonce's convictions and sentences. *Id*.

On August 12, 2020, Coonce filed for a writ of certiorari, which was denied on November 1, 2021. *Coonce v. United States*, 142 S. Ct. 25 (2021).

Although Coonce has not filed a motion under 28 U.S.C. § 2255, the Government has agreed to a waiver of the statute of limitations for Coonce to file his motion on or before February 9, 2024. (Civ. D.E. 42.)

On April 28, 2023, Coonce filed the instant motion requesting permission to contact and interview the jurors and alternate jurors who served at his trial. (Civ. D.E. 38.) The Government's response follows.

### III. <u>Argument and Authorities</u>

Coonce requests permission to contact all jurors and alternate jurors who served at his trial to "investigate all claims for this § 2255 motion" that he has yet to file. (Civ. D.E. 38 at 1.) Coonce acknowledges that he must make a "preliminary showing" of possible misconduct but argues that the only way this can be accomplished is by conducting a jury investigation. (Civ. D.E. 38 at 3-4.) Coonce further alleges that he has shown the possibility of juror bias by proposing inquiries into jurors' relationship with the Springfield Medical Center and that further investigation is needed to discover if any jurors had a personal connection to the crime site. (Civ. D.E. 38 at 4-5.) Coonce also claims that another potential bias is jurors' attitudes about traumatic brain injuries and mental-health defenses, and that probing jurors would determine whether the jurors harbored bias during

-4-

the penalty phase. (Civ. D.E. 38 at 5.) Coonce further alleges that there could potentially be concerns regarding external influence on deliberations, and that jurors are witnesses to courtroom proceedings, including the conduct of defense counsel and the prosecution. (Civ. D.E. 38 at 6-7.)

Coonce's motion should be denied because his case is closed and he does not have a pending motion before this Court; a habeas petitioner is not entitled to discovery; no good cause exists because Coonce has not provided any basis for finding misconduct, irregularity, or outside intrusion into the jury process; Coonce's specific claims as to inquiring about juror relationships with the Springfield Medical Center, a personal connection to the crime site, and potential bias about traumatic brain injuries and mental-health defenses were already decided on direct appeal, and Coonce may not relitigate those claims in a § 2255 motion; and Coonce should not be granted post-trial juror interviews based on purely speculative grounds.

## A. *Coonce's Criminal Case Is Closed, and He Has Not Demonstrated Good Cause*

The rules governing collateral review of federal convictions permit discovery, but only upon a showing of good cause. 18 U.S.C. § 2255, rule 6. Good cause exists when the defendant's § 2255 petition establishes a prima facie case for relief. *Harris v. Nelson*, 394 U.S. 286 (1969); *accord Bracy v. Gramley*, 520 U.S. 899 (1997). In other words, a good cause finding will lie "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09; *see also United States v. Roane*, 378 F.3d at 402-03 (applying this standard in the § 2255 context).

Here, Coonce has no pending § 2255 motion before this Court, and his criminal case is closed. "A trial court loses jurisdiction once the defendant's sentence is executed, unless there is a constitutional or legislative grant of authority." *State v. Butler*, 209 Conn. App. 63, 65, 267 A.3d 256, 260 (2021). While Coonce asserts that counsel has a duty to fully investigate all issues and claims pertaining to the constitutionality of the verdicts, such argument has no basis in the law. "The [constitutional] right to counsel does not require that a criminal defense attorney leave no stone unturned and no witness unpursued." *Berryman v. Morton*, 100 F.3d 1089, 1101 (3d Cir. 1996); *see also Thomas v. Gilmore*, 144 F.3d 513, 515 (7th Cir. 1998) ("A reasonable investigation is not . . . the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources . . . would conduct."). Whatever duty of investigation counsel may have it does not require a complete probing of every imaginable constitutionally-based claim against the judgment.

Coonce also has no constitutional right to counsel on collateral review. *See Clay v. Bowersox*, 367 F.3d 993, 1005 (8th Cir. 2004) ("There is no federal constitutional right to the effective assistance of post-conviction counsel."); *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999) (finding "no general right to counsel" for § 2255 litigants).

A showing of good cause for discovery springs from the quality of the claim for collateral relief, and no other factor. *See Bracy*, 520 U.S. at 908-09. At this juncture, the Court should not become embroiled in a piecemeal adjudication of discovery issues when there is no pending motion. Rather, the Court should first consider the viability of Coonce's § 2255 claims generally, before determining which of them might require

evidentiary expansion. Such an ordered process will avoid the risk that former jurors will be unnecessarily burdened with a superfluous investigation.

**B.** ***Post-trial Juror Interviews Are Generally Disfavored***

District courts have wide discretion when deciding whether to allow litigants to contact jurors after trial. *United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003); *McCabe v. Macaulay*, No. 05–CV–73–LRR, 2008 WL 5070706, at *1 (N.D. Iowa Nov. 25, 2008); 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 606.05[1][C] (2d ed. 1997). As a general rule, federal courts disfavor post-trial interviews of jurors. *See United States v. Self*, 681 F.3d 190, 199 (3d Cir. 2012); *United States v. McDougal*, 47 F. Supp. 2d 1103, 1104 (E.D. Ark. 1999); Weinstein & Berger, *supra*, § 606.06[1] ("The federal courts are notoriously reluctant to permit either informal post-verdict interviews with or testimony from discharged jurors.").

"Most courts do not allow attorneys to contact jurors after the conclusion of trial." *Olsson v. A.O. Smith Harvestore Prod., Inc.,* 696 F.Supp. 411, 412 (S.D. Ind. 1986). *See also*, *Sixberry v. Buster*, 88 F.R.D. 561, 561-62 (E.D. Pa. 1980) ("It is well settled that the Federal courts strongly disfavor any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them.") (internal quotations and citations omitted). The reasons for this disfavor include protecting jurors from harassment, preserving jurors' freedom of deliberation, preventing jury tampering, and increasing the certainty of verdicts. *Dall v. Coffin*, 970 F.2d 964, 972 (1st Cir. 1992); *Wilkerson v. Amco Corp.*, 703 F.2d 184, 85–86 (5th Cir. 1983); Weinstein & Berger, *supra*,

§ 606.06[1]; *Sioux Falls Kenworth, Inc. v. Isuzu Com. Truck of Am., Inc.*, No. 4:14-CV-04187-RAL, 2016 WL 6804897, at *1 (D.S.D. Nov. 16, 2016).

Courts typically deny a litigant's request to interview jurors' post-verdict absent a threshold showing of an outside intrusion into the jury process. *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) ("This court has held that a trial judge is well within his discretion in denying leave to inquire of jurors where there was no claim of external interference with the process.") Only when there is a showing of illegal or prejudicial intrusion into the jury process will the court sanction such an inquiry. *See McElroy by McElroy by McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1511 (11th Cir. 1990) (holding that denial of post-verdict motion to interview jurors was not an abuse of discretion where moving party did not allege that any prejudicial information or outside influence was brought to bear on the jury); *McCabe*, 2008 WL 5070706, at *2 (denying motion to interview jurors because moving party did not make a preliminary showing that members of the jury either learned of any extraneous prejudicial information or that outside influences were brought to bear upon them); *Allen v. United States*, No. 4:07CV00027 ERW, 2008 WL 80061, at *1 (E.D. Mo. Jan. 4, 2008) (same); *Economou v. Little*, 850 F. Supp. 849, 852 (N.D. Cal. 1994) ("Most federal courts deny requests to conduct post-verdict interviews of jurors unless there is a proper preliminary showing of likely juror misconduct or witness incompetency."); *see also United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir. 1976) (holding that defendant had no right to subpoena jurors after trial when he had not made "specific allegations that any of them engaged in overt improper acts susceptible of proof"). Mere "'fishing expeditions' carried out by losing attorneys

interested in casting doubt on the jury's verdict" are not allowed. *J. Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).

These same reasons form the basis of Federal Rule of Evidence 606(b), which generally precludes the admission of juror testimony to impeach a verdict. Fed. R. Evid. 606(b) advisory committee's note to 1972 proposed rules (explaining that the "values sought to be served" by excluding evidence received for the purpose of invalidating a verdict "include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment").

Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes in conflict with Rule 606, and to diminished confidence in jury verdicts as well as unbalanced trial results depending unduly on the relative resources of the party. *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir. 1985). *See also, Shoen v. Shoen*, 933 F.Supp. 871 (D.Ariz. 1996), *aff'd* 113 F.3d 1242, 1997 WL 243533 (9th Cir. 1997) (Local rule limiting juror contact reflects public policy of allowing jurors to complete their service without concern for future consequences.).

**C.** **_Coonce Has Not Made A Preliminary Showing of Misconduct, Irregularity, or Outside Intrusion Into the Jury Process_**

No good cause exists for this Court to grant juror interviews because Coonce has not provided any basis for finding misconduct, irregularity, or outside intrusion into the jury process. In the absence of a good cause finding that would support judicial permission to interview former jurors, Coonces's attorneys have no constitutional duty to speak with the panel members.

     1.     _Claims Decided on Direct Appeal May Not Be Relitigated Under 28 U.S.C. § 2255_

"It is well-settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992) (per curiam); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). The law of the case doctrine requires that the decisions by the Eighth Circuit, handed down on direct appeal, remain undisturbed in subsequent proceedings. *Baranski v. United States*, 515 F.3d 857, 861 (8th Cir. 2008).

Coonce requests permission to interview jurors alleging that he has shown the possibility of juror bias by proposing inquiries into jurors' relationship with the Springfield Medical Center and that further investigation is needed to discover if any jurors had a personal connection to the crime site. (Civ. D.E. 38 at 4-5.) Coonce also claims that another potential bias is jurors' attitudes about traumatic brain injuries and mental-health defenses, and that probing jurors would determine whether the jurors harbored bias during the penalty phase. (Civ. D.E. 38 at 5.)

On appeal, Coonce argued in his opening brief that this Court erred by refusing to voir dire areas of bias that were critical to Coonce's case. Relevant here, Coonce argued that this Court declined to ask jurors if they had a close relative or friend that had worked at the prison where the murder occurred and if there was a personal relationship with the Springfield Medical Center. (Coonce Brf. at 214-218.) Coonce also argued that this Court never explored during voir dire potential bias regarding traumatic brain injuries or a negative opinion about testifying mental health experts. (Coonce Brf. at 222-224.) Coonce

further argued that this Court's voir dire into these areas violated his Fifth Amendment right to due process and his Sixth Amendment right to an impartial jury. (Coonce Brf. at 225-227.)

The Eighth Circuit considered these arguments and determined there was no abuse of discretion in conducting voir dire concerning the connections with the Springfield Medical Center; that the court adequately inquired about juror attitudes towards mental health issues; and no abuse of discretion when inquiring whether the jury had any negative attitudes toward mental health professionals. Coonce, 932 F.3d at 644-645.

Since Coonce presented the substantive claims he wishes to further investigate to the Eighth Circuit, and there was no abuse of discretion, he is procedurally barred from re-litigating the claims in a § 2255 motion.

2. *Coonce's Claims Are Speculative and Too Generalized for Consideration*

Coonce argues that jury deliberations suggest the possibility of outside influence, where the jurors could not at first return a unanimous death verdict for Hall, and that any external influence on deliberations of Hall would have implicated Coonce as well. (Civ. D.E. 38 at 6.) Coonce also argues that without interviewing the jurors, he is unable to gather juror testimony as to "what occurred in court during trial" and that jurors are witnesses to courtroom proceedings, to include defense counsel and the prosecution's conduct. (Civ. D.E. 38 at 6-7.)

These arguments seek post-trial juror interviews based on purely speculative grounds, claiming that if the jurors are interviewed, the jurors might have something to say that would be material. Speculating a possibility of outside influence and contacting jurors

-11-

to elicit potential and unknown witness testimony for a § 2255 hearing is insufficient to warrant conducting juror interviews. The record does not reveal any misconduct or irregularity on the part of any juror, and there are no affidavits attached to the defendant's motion demonstrating personal knowledge of misconduct or outside influence by any juror. Further, the court proceeding transcripts accurately reflect "what occurred in court during trial", including the conduct of all parties.

Allegations in a motion for post-trial juror interviews cannot be based upon conclusory statements and speculation. Indeed, in all cases to which the defendant cites, there was proper reasoning to expand the record. Coonce's request for permission to interview jurors on purely speculative claims amounts to a "fishing expedition," a practice explicitly and repeatedly condemned on collateral review. *See, e.g., Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996); *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994); *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994); *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) (§ 2255 case); *Perez v. United States*, 274 F. Supp. 2d 330, 336 (E.D.N.Y. 2003); *Kiley v. United States*, 260 F. Supp. 2d 248, 264 (D. Mass. 2003). Conclusionary allegations do not warrant discovery. *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (citing *Willie v. Maggio*, 737 F.2d 1372 (5th Cir. 1984)).

In *United States v. Gravely,* 840 F.2d 1156, 1159 (4th Cir. 1988), the defendant's request to interview jurors to determine if pressure and lack of adequate time for deliberation were self-imposed or the result of outside influence was properly denied, because the defendant failed to make a threshold showing of improper outside influence. (citing *Tanner v. United States*, 483 U.S. 107, 120–21 (1987)).

In this case, there is nothing on the record demonstrating misconduct, irregularity, or outside intrusion into the jury process; the case was fairly, impartially tried; and it is improper to interview and interrogate jurors nine years after the verdict in attempting to discover juror misconduct or outside intrusion where none is known to exist. *See United States v. Caldwell,* 83 F.3d 954, 957 (8th Cir. 1996) (holding the district court acted within its discretion in finding the defendant's "nebulous allegations" were insufficient to warrant further investigation).

## IV. <u>Conclusion</u>

Accordingly, for the reasons set forth above, the Government respectfully requests that this Court deny Coonce's motion for permission to contact jurors.  (Civ. D.E. 38.)

Respectfully submitted,

Teresa A. Moore
United States Attorney

By   */s/ Randall D. Eggert*
RANDALL D. EGGERT
Assistant United States Attorney
901 St. Louis, Suite 500
Springfield, Missouri  65806
Telephone:  (417) 831-4406

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on May 11, 2023, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

/s/ Randall D. Eggert
Randall D. Eggert
Assistant United States Attorney