UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

Wesley Paul Coonce, Jr.,

        Petitioner,

        v.

United States of America,

        Respondent.

Case No. 6:20-cv-08000-BCW

**Petitioner's reply and suggestions in support of motion for permission to contact jurors**

Petitioner Wesley Paul Coonce, Jr., by undersigned counsel, provides, in reply to the government's opposition, these suggestions in support of his motion for permission to contact the individuals who served as jurors and alternate jurors at his capital trial.

## ARGUMENT

The government has not addressed the specific showing Coonce made in his motion of juror misconduct. Instead, the government relies on inapplicable procedural arguments and inapposite caselaw. In this capital case, however, Coonce has set forth several reasons for possible juror bias and external influence on the jury. This showing, combined with the importance of jurors as witnesses to the trial, justify the limited remedy of allowing juror contact. This Court should grant Coonce's motion.

### A. Coonce does not have to establish good cause.

The government mistakenly asserts that Coonce must demonstrate good cause to conduct juror interviews. *See* ECF No. 44 at 5–7. This good standard applies only to requests "to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rules Governing Section 2255 Proceedings, R. 6.

Coonce's request for permission to contact jurors is not a request for discovery. Coonce has not "requested documents," "proposed interrogatories," or provided "requests for admission," which are what the rule describes as discovery. Rules Governing Section 2255 Proceedings, R. 6(b); *see also United States v. Cuya*, 964 F.3d 969, 972 (11th Cir. 2020) (describing discovery under § 2255 to cover requests for "transcripts, indictments, search warrants, or other records"). Coonce, in fact, has not asked for the "[c]ompulsory disclosure" of any "information that relates to the litigation," so it makes little sense for the discovery standard to apply. *See Discovery*, Black's Law Dictionary (11th ed. 2019).

Rather, "long-established common law rules," not the rules of criminal or civil procedure, govern access to jurors. *See Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020); *cf. Pena-Rodriguez v. Colorado*, 580 U.S. 206, 215 (2017) (detailing the "common-law development of the no-impeachment rule"). These common law rules provide "a procedural hurdle" to obtaining access to jurors—a hurdle meant to promote free deliberation in the jury room, increase the finality of verdicts, and protect jurors from harassment. However, once a defendant makes a preliminary showing of juror bias, a district court is free to set aside the procedural hurdle and allow juror access. *Mitchell*, 958 F.3d at 788, 792. The government has cited no case in which a court applied a "good cause" standard to a request for juror access at the investigation stage. The appropriate standard is simply "a preliminary showing of juror bias," *see id.*, which Coonce has satisfied here.

If, however, the good cause standard applies, the alleged facts of juror bias and external influence if "fully developed" would entitle Coonce to relief. *Harris v. Nelson*, 394 U.S. 286, 300 (1969). In most cases, juror misconduct presumptively violates a defendant's constitutional rights to a fair trial and an impartial jury. *See United States v. Blumeyer*, 62 F.3d 1013, 1016 (8th Cir. 1995).

**B.      Coonce has made a preliminary showing of juror misconduct.**

The government cites several cases asserting that juror interviews are disfavored. *See* ECF No. 44 at 7–9. None of these cases even purport to analyze the duties of post-conviction counsel in capital cases. Counsel in such cases must investigate all possible claims or risk forfeiting entitlement to relief. *See* ECF No. 38 at 2. And post-conviction proceedings often reveal juror misconduct even where the trial record is inconclusive on the issue. *Id.* at 3–4 (collecting cases). The American Bar Association guidelines therefore implore post-conviction counsel to "continue an aggressive investigation of all aspects of the case," and avoid reliance "on the previously compiled record" in favor of "a thorough, independent investigation." American Bar Association, *ABA Guidelines for Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 1080, 1085 (2003).

This reasoning applies with full force to juror interviews. "It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment." *Mattox v. United States*, 146 U.S. 140, 149 (1892). Courts cannot tolerate "any ground of suspicion that the administration of justice has been interfered with." *Id.* Thus, juror interviews "may be not only desirable, but necessary, to reveal irregularities that may have led to a perversion of the jury's function in the justice system." 3 Mark Brodin et al., *Weinstein's Federal Evidence § 606.05* (2d ed. 2021).

After all, any general reluctance against juror interviews is not ironclad. *See, e.g.*, *State v. Jones*, 979 S.W.2d 171, 183 (Mo. 1998) (affirming order allowing for inquiries into juror misconduct). The government cites the need to prevent harassment of or tampering with jurors, and the desire to preserve the freedom of deliberations and the stability of verdicts. *See* ECF No. 44 at 7–9. These concerns are easily accommodated.

To start, "[t]he rules of professional ethics prohibit interviews calculated merely to harass or embarrass a juror." 27 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 6076* (2d ed. 2023) (collecting authorities). And this Court could "require that counsel give notice before the interviews occur, thereby permitting the court to supervise the interview process so as to minimize the potential for harassment." *Id.*; *see also* ECF No. 38 at 6 (summarizing limitations). The government has otherwise not provided any "actual or potential threat either of juror harassment or of invasion of the deliberative process" specific to this case. *See United States v. Antar*, 38 F.3d 1348, 1350 (3d Cir. 1994).

Moreover, "insufficient evidence exists to show that post-verdict juror interviews distort the deliberative process," and court supervision could "prohibit just the chilling speech." Nicole B. Casarez, *Examining the Evidence: Post-Verdict Interviews and the Jury System*, 25 Hastings Commc'n and Ent. L.J. 499, 582 (2003). The government's "utilitarian values like finality and certainty must be balanced against the values of fairness and accuracy." 27 Wright & Miller, *supra*, § 6072. Already-existing rules, such as those limiting the admissibility of juror testimony, strike this balance while giving "stability and finality to verdicts." *See Pena-Rodriguez*, 580 U.S. at 218 (citing Fed. R. Evid. 606(b)).

### 1. Coonce has made a preliminary showing of juror bias.

Rather than address the substance of Coonce's showing on bias, the government simply asserts that the law-of-the-case doctrine bars relitigation of such claims. *See* ECF No. 44 at 9–11. This argument fails.

The law-of-the-case doctrine "provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Parker*, 762 F.3d 801, 806 (8th Cir. 2014) (cleaned up). But the law-of-the-case doctrine does not apply in the face of new evidence. *See United States v. Camacho-Bordes*, 94 F.3d 1168, 1173 n.7 (8th Cir.

1996); *see also Conley v. United States*, 323 F.3d 7, 13 (1st Cir. 2003) (en banc) (deviating from law of the case "where there is new evidence on the question at issue"). Information gathered from juror interviews would necessarily supply evidence that was unavailable at trial. *See Barnes v. Joyner*, 751 F.3d 229, 248 (4th Cir. 2014). Similarly, a court may "depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 619 n.8 (1983). In capital cases, especially, this "manifest injustice exception" often applies because of "the importance of reviewing capital sentences on a complete record." *Dobbs v. Zant*, 506 U.S. 357, 358–59 (1993) (per curiam). As explained, juror misconduct would have presumptively prejudiced Coonce's fair trial rights. *See Remmer v. United States*, 347 U.S. 227, 229 (1954).

Regardless, the law-of-the-case doctrine "comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 348 n.18 (1979). Any claims based on evidence of actual juror bias would differ from the claims on direct appeal about the adequacy of voir dire. Although both genres of claims implicate Coonce's fair trial rights, the direct appeal claims merely addressed the district court's discretion in controlling for *potential* bias. *See United States v. Coonce*, 932 F.3d 623, 643–45 (8th Cir. 2019). By contrast, evidence from juror interviews would reveal *actual* bias and thus raise a presumption of prejudice. *See Mattox*, 146 U.S. at 149–50. Separately, any claim about the ineffectiveness of trial counsel during voir dire, using evidence gathered from juror interviews, could not have been raised on direct appeal. *See United States v. Petty*, 1 F.3d 695, 696 (8th Cir. 1993) (explaining that ineffective-assistance-of-counsel claims are typically "not ripe" on direct appeal).

Absent its law-of-the-case argument, the government has not addressed Coonce's preliminary showing of possible bias. The Eighth Circuit acknowledged that voir dire left unexplored possible personal connections between jurors and the

site of the crime. *See Coonce*, 932 F.3d at 644. And at trial, the district court did not sufficiently explore juror attitudes toward mental-health defenses, a topic susceptible to strong prejudices. *See* ECF No. 38 at 5 (collecting authorities). A more probing inquiry into both topics is necessary.

### 2. Coonce has made a preliminary showing of external influence.

The government simply asserts that any claim of outside influence is too speculative to warrant juror contact. *See* ECF No. 44 at 11–13. But "the time-honored cry of fishing expedition" alone cannot "preclude a party from inquiring into" important facts. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (internal quotation marks omitted). Coonce has provided this court with "sound reason to believe that interviews would uncover" relevant evidence. *United States v. Birchette*, 908 F.3d 50, 58 (4th Cir. 2018). Yet the government has not addressed any of the facts surrounding deliberations here.

The jurors somehow reached a unanimous death verdict despite informing the court fewer than two hours earlier that they were "100 percent" certain they could not reach a verdict as to Hall. *See* ECF No. 38 at 5. This sudden change in attitude is especially surprising, because that same jury found much more mitigation as to Coonce. *Id.* at 5–6. These circumstances justify at least "a preliminary inquiry" into penalty-phase deliberations. *See United States v. DeLeon*, 187 F.3d 60, 67–68 (1st Cir. 1999). At this stage, Coonce does not have "to prove his case conclusively"; he only needs a strong enough showing "to warrant an investigation to discover the truth." *United States v. Moten*, 582 F.2d 654, 668 (2d Cir. 1978) (per curiam).

### C. Interviews with jurors are necessary to uncover what occurred at trial.

Lastly, the government does not substantively address the importance of jurors as witnesses to the trial. *See* ECF No. 44 at 11–13. Coonce has cited several

cases in which jurors, as witnesses, supplied testimony to support claims of ineffective assistance of counsel or prosecutorial misconduct. *See* ECF No. 38 at 6–7; *see also Tippins v. Walker*, 77 F.3d 682, 688 (2d Cir. 1996) (juror testimony that defense counsel was asleep for most of the trial). This testimony would not be subject to Rule 606(b) evidentiary limitations, as it would not concern deliberations. *See* ECF No. 38 at 7 (collecting cases). Because a § 2255 motion often presents "the first opportunity" to raise claims such as ineffective assistance of counsel, this Court should allow Coonce to interview jurors to properly investigate any such claims. *See Ramirez v. United States*, 799 F.3d 845, 853 (7th Cir. 2015).

## CONCLUSION

For these reasons, this Court should grant Coonce's motion for permission to contact the individuals who served as jurors and alternate jurors at his capital trial.

Dated May 24, 2023.

Respectfully submitted,

*/s/ Amelia L. Bizzaro*

Amelia L. Bizzaro
Wisconsin State Bar No. 1045709
Assistant Federal Public Defender
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388–6577
amelia_bizzaro@fd.org

*/s/ John Jenab*

John Jenab
Missouri State Bar No. 47452
Jenab Law Firm, P.C.
P.O. Box 30
Lampe, MO 65681
(816) 759–8686
john.jenab@gmail.com